STATE EX REL. W. C. ROBERTSON v. FRANK JACKSON.

(Filed 22 February, 1922.)

1. **Elections—Quo Warranto—County Board of Canvassers—Prima Facie Case.**

In proceedings in the nature of a *quo warranto,* to determine the respective rights of the parties contesting for an office, the result of the election, as declared by the county board of canvassers, must be taken as *prima* *facie* correct. C. S., 5986.

2. **Appeal and Error—Reference—Findings—Evidence.**

The facts found by the referee as to the result of an election in proceedings in the nature of a *quo warranto,* and approved by the trial judge, are not subject to review on appeal when supported by competent evidence.

3. **Appeal and Error—Reference—Courts—Findings—Evidence—Facts— Legal Inferences.**

The trial judge may hear and consider exceptions to the referee's report, and make different or additional findings of fact, which are not reviewable on appeal unless there is no sufficient evidence to support them, or error committed in receiving or rejecting testimony upon which they are based, or some other question of law is raised with respect to such findings.

4. **Appeal and Error—Reference—Elections—Findings—Fraud.**

The question of fraud in the returns of the county board of canvassers as to those voting in an election, in proceedings in the nature of a *quo*

*warranto,* to determine the rights of contestants for a public office, is eliminated on appeal, when the report of the referee, approved by the trial judge, finds the absence of fraud, upon competent evidence.

**5. Appeal and Error—Reference—Report of Referee—Findings—Exceptions—Counts.**

Where there are no exceptions filed to the findings of the referee, the trial judge may adopt them under the assumption that they are *prima facie* correct.

**6. Appeal and Error—Presumptions—Burden of Proof.**

On appeal from the findings and judgment of the referee or the trial judge, in a contested election case, they are assumed to be *prima facie* correct, with the burden on the appellant to show the contrary.

**7. Appeal and Error—Reference—Findings—Exceptions.**

Only such findings of a referee or of the trial judge as are excepted to by the appellant will be considered on appeal.

**8. Appeal and Error—Elections—Exceptions—Reference—Findings—Immaterial Matter.**

Exceptions of the defendant, in a contested election case, that the testimony of certain voters was incompetent to impeach the result declared by the county board of canvassers, become immaterial on appeal, when it appears that the referee has found the absence of fraud and against the relator, under competent evidence, which was approved by the trial judge.

**9. Appeal and Error—Reference—Conflicting Findings—Ultimate Facts—Evidence.**

The result declared by the county board of canvassers is *prima facie,* and presumptive evidence of its own correctness, and where the referee has sustained it, and this finding has been approved by the trial judge, the court on appeal cannot pass on the relative weight of the testimony or alleged inconsistencies of finding, but accept the ultimate findings as controlling.

**10. Elections—Votes—Felony—Constitutional Law.**

In a contested election case, a conviction of an offense under a local law prescribing punishment in the State's Prison, renders void the vote of the one so convicted, whether the indictment charged or failed to charge that the alleged offense was "feloniously" committed. Const., Art. VI, sec. 2.

**11. Elections—Votes—Felonies—Conviction—Statutes—Election of Prosecution.**

Where the eligibility of a voter at a contested election depends upon either a conviction under a local prohibition act or under the general act of 1908, now C. S., 411, the former prescribing the word "feloniously" selling spirituous liquor, etc., and the other not so prescribing it, a conclusion by the referee, approved by the court, that a charge in the indictment of the word "feloniously" was an election of the State to prosecute under the private act, and the failure of the use of this word, an election

to prosecute under the general statute, was not error, the general statute expressly excepting from its provisions special or local acts relating to the subject.

## 12. Elections—Votes—Absentee Voters—Statutes.

. Under the provisions of Public Laws of 1917, ch. 23, those who were within the county at the time of an election were not accorded the privilege of voting as absentee voters; and the votes of those who were within the county and cast by this method, before the amendment of 1919, now C. S., 5960, are invalid, and should not be counted.

APPEALS by relator and defendant from *Shaw, J.,* at September Term, 1920, of POLK.

Civil action, in the nature of a *quo warranto,* brought under C. S., 870, to determine the question of title to the office of sheriff of Polk County for the two-year period beginning in December, 1918, and ending in December, 1920.

The defendant and the relator were rival candidates for the office of sheriff of Polk County in the general election of 1918. The official returns, as received and declared by the canvassing board of said county, gave the defendant a majority of 2 votes; the result being 686 for the defendant and 684 for the relator. Whereupon, the election of the defendant was duly declared by the official board.

The relator then instituted this suit to contest the election of the defendant, alleging fraud and misconduct on a part of some of the poll holders, registrars, and judges of election. By consent, the case was heard before a referee, who found that the allegations of fraud had not been sustained, and that the correct returns of the number of legal votes cast in said election should have shown 643 for the defendant and 623 for the relator. In a supplemental report the referee deducted 4 votes, originally given to the relator, reducing his total number to 619. Both the relator and the defendant filed exceptions to the referee's findings of fact and conclusions of law; and the matter was heard by his Honor, T. J. Shaw, at the September Term, 1920, of Polk Superior Court, who found that the defendant received 654 legal votes and the relator 647, and, in accordance with said determination, rendered judgment in favor of the defendant. From this finding and judgment the relator and the defendant both appealed to this Court, each assigning errors.

Following the argument, and after a careful consideration of the record, and in order that we might more readily and clearly understand it, a *certiorari* was directed to his Honor below, asking that he enter a supplemental order or judgment with respect to certain rulings and findings originally made by him. In response to this request, an additional judgment was entered, in which his Honor concluded that the

defendant should be credited with 668 legal votes and the relator with 652. To this supplemental order and judgment both sides have filed exceptions.

*Quinn, Hamrick & Harris, McD. Ray, and W. A. Smith for relator.*
*Solomon Gallert and Shipman & Arledge for defendant.*

STACY, J., after stating the facts as above: This proceeding is a civil action in the nature of a *quo warranto,* brought under C. S., 870, to determine the validity of the respective claims of the relator and the defendant to the office of sheriff of Polk County. The contest relates to the election held in the year 1918. In passing upon the numerous exceptions presented for our consideration, there are a few facts and principles which should be kept clearly in mind:

1. In the first place, the result of the election, as declared by the county board of canvassers, must be taken as *prima facie* correct. *Jones v. Flynt,* 159 N. C., 87. Under C. S., 5986, it is the duty of said board of county canvassers to "open, canvass, and judicially determine the returns," and to "pass upon all facts relative to the election, and judicially determine and declare the result of the same."

2. The findings of fact of a referee, approved by the trial judge, are not subject to review on appeal, if they are supported by any competent evidence. *Dorsey v. Mining Co.,* 177 N. C., 60; *Hudson v. Morton,* 162 N. C., 6; *Hunter v. Kelly,* 92 N. C., 285. Likewise, where the judge, upon hearing and considering exceptions to a referee's report, makes different or additional findings of fact, they afford no ground for exception on appeal, unless there is no sufficient evidence to support them, or error has been committed in receiving or rejecting testimony upon which they are based, or unless some other question of law is raised with respect to said findings. *Caldwell v. Robinson,* 179 N. C., 518; *Thompson v. Smith,* 156 N. C., 345; *Rhyne v. Love,* 98 N. C., 486. See, also, C. S., 579, and annotations collected thereunder.

3. In the instant case, the referee has found as a fact, and the same has been approved by the trial judge, that the allegations of fraud and misconduct have not been sustained; and the contrary is, therefore, found to be true. There is, then, no question of fraud or misconduct on the part of any of the election officials; and the case in the main reduces itself to a problem in simple arithmetic, or addition, after eliminating the ballots of all illegal voters and counting those who were denied the right to vote when they were entitled to do so.

It appears from the report of the referee that the official precinct returns in said election, as received, tabulated and declared by the board of county canvassers, were as follows:

STATE *v.* JACKSON.

|  | For Relator | For Defendant |
|---|---|---|
| Shields Precinct | 107 | 226 |
| Columbus Precinct | 99 | 104 |
| Tryon Precinct | 109 | 165 |
| Saluda Precinct | 127 | 37 |
| Mill Springs Precinct | 66 | 89 |
| Pea Ridge Precinct | 32 | 18 |
| Big Level Precinct | 54 | 37 |
| Jackson's Mill Precinct | 90 | 10 |
| Total | 684 | 686 |

Upon the hearing the referee found that, after deducting the illegal ballots which had been cast in the election and adding the votes of those who had wrongfully been denied the right to vote, the relator and the defendant each received the following number of legal votes at the several voting precincts, to wit:

|  | For Relator | For Defendant |
|---|---|---|
| Shields Precinct | 93 | 215 |
| Columbus Precinct | 92 | 89 |
| Tryon Precinct | 94 | 159 |
| Saluda Precinct | 120 | 34 |
| Mill Springs Precinct | 60 | 83 |
| Pea Ridge Precinct | 28 | 16 |
| Big Level Precinct | 51 | 37 |
| Jackson's Mill Precinct | 85 | 10 |
| Total | 623 | 643 |

In a supplemental report, the referee found that 4 votes, counted in his original report for the relator (2 in Columbus Precinct, 1 in Mill Springs, and 1 in Jackson's Mill), were illegal, and directed that they be deducted from the total number originally awarded to the relator, as above noted.

. These findings of the referee were slightly modified by his Honor in passing upon the respective exceptions of the different parties; and, in the supplemental order made in response to the *certiorari* issued by this Court, 668 legal votes were awarded to the defendant and 652 to the relator. As we are unable to ascertain with certainty from the record in which precinct some voters, as alleged, were denied the right to vote and others voted illegally, from this point on we must deal with totals rather than with precinct returns in passing upon the different rulings and findings made by the trial court. This is rendered necessary because of the method employed by the referee and his Honor below in stating

their conclusions and findings of fact. A different form of statement might have been somewhat clearer and more readily understood, but we must take the record as we find it.

In considering the many exceptions to the referee's report, his Honor below assumed at the outset that the findings and rulings of the referee were *prima facie* correct (*Barcroft v. Roberts,* 91 N. C., 363; *Green v. Jones,* 78 N. C., 265); and, in the absence of any objection or exception, the same were properly adopted as the findings of the court. *Mfg. Co. v. Lumber Co.,* 177 N. C., 404, and cases there cited; *Chard v. Warren,* 122 N. C., 75. Likewise, we shall assume, as we are required to do, that the findings and judgment of the Superior Court are *prima facie* correct; and the party alleging error must show it. *McGeorge v. Nicola,* 173 N. C., 707; *Marler v. Golden,* 172 N. C., 823, and cases there cited. We can only consider exceptions to the rulings of the court below in amending, making additional findings, and confirming or disaffirming the referee's report. *Perry v. Hardison,* 99 N. C., 21. And even then we can only correct errors of law. *Thornton v. McNeely,* 144 N. C., 622. The judge of the Superior Court, in the exercise of his revisory power, may "set aside, modify, or confirm, in whole or in part, the report of the referee, and the appellate jurisdiction attaches to his rulings in matters of law only." *Vaughan v. Llewellyn,* 94 N. C., 472.

The chief contest here and below was over the returns from Shields Precinct. It was alleged in the complaint that 152 voters (naming them) cast their ballots for the relator in said precinct, and that "by false and fraudulent manipulations, upon the part of some of the poll holders, only 107 votes were counted for the relator and a great number of them were either fraudulently and unlawfully not counted for relator, or fraudulently and unlawfully counted for the defendant." The principal evidence offered in support of these allegations was that of the specified voters themselves who undertook to testify, and a majority of them did say that they voted for the relator. The defendant objected to this evidence upon the ground that it was incompetent and should not have been received or considered, especially as the allegations of fraud were not sustained. He says the admission of such evidence amounted to the holding of a judicial election, under the guise of a contest, and is subversive of sound principles and contrary to the law of the land. But we deem it unnecessary to pass upon the competency of this evidence in the manner now presented, as it appears to have had but little or no weight with the referee. At any rate, he allowed the relator a smaller number of votes in Shields Precinct than was given to him by the official returns. Besides, there was other evidence in support of his findings. The question, therefore, seems to be academic so far as the instant case is concerned. For information, however, an examination

STATE *v.* JACKSON.

of the following cases may be of interest. *Boyer v. Teague,* 106 N. C., 625; *People ex rel. Judson v. Thacker,* 55 N. Y., 525; *People v. Pease,* 27 N. Y., 45; *Major v. Barker* (Ky.), 35 S. W., 543; *Young v. Deming* (Utah), 33 Pac., 818; *Jenkins v. Board of Elections,* 180 N. C., 169; 9 R. C. L., 1150 *et seq.*

The relator also contends that inconsistent findings have been made with respect to the number of ballots cast for the opposing candidates in Shields Precinct. However this may be, suffice it to say, there is some evidence appearing on the record sufficient to support the ultimate findings of his Honor below. The result, as declared by the board of county canvassers, is within itself *prima facie* and presumptive evidence of its own correctness. *Wallace v. Salisbury,* 147 N. C., 58; *Bynum v. Comrs.,* 101 N. C., 412; *Gatling v. Boone,* 98 N. C., 573. We cannot pass upon the relative weight of the testimony, but it is our duty to accept the ultimate findings of fact where they are supported by any competent evidence at all. *Battle v. Mayo,* 102 N. C., 413, and cases there cited.

Coming, then, to the remaining exceptions, and for convenience we will start with the last, or supplemental judgment, and add to or subtract from the totals therein found, as our rulings on the different exceptions may affect or change the number of votes credited to each.

(*a*) The vote of Will D. Owens was counted for the relator; but, in a subsequent ruling, his Honor finds that this vote was illegal. Therefore, it should be deducted; 652 minus 1 equals 651.

(*b*) The votes of V. H. Calvert and G. S. Taylor were counted by his Honor for the relator and added to the total number of votes awarded to him by the referee; but these votes had already been included by the referee in his total of 93 in Shields Precinct. Referee's finding number 50 reads: "To the remainder must be added two votes which would have been cast by V. H. Calvert and G. S. Taylor, making the total of the relator 93." Hence, these two votes should be deducted; 651 minus 2 equals 649.

(*c*) The votes of J. E. Prince and 7 others were counted for the relator in sustaining in part his 13th exception, and 11 votes were counted for him in sustaining his 14th exception; but, as the referee had already included these in his 49th finding of fact, his Honor erred in adding them again, which resulted in counting them twice. They should, therefore, be deducted; 649 minus 19 equals 630.

(*d*) The votes of J. A. Hutcherson and Grayson Lovelace were counted for the relator, although in subsequent paragraphs it was stated that the court could not find for whom they voted. For the same reason, however, the votes of J. Leslie Miller and J. Rowland Gilbert were subtracted from the defendant's total. While these rulings would seem to be inconsistent, apparently to the defendant's disadvantage, yet we must

assume that said votes have been correctly counted. There was some evidence ultra to support the addition in the one case and the subtraction in the other.

(*e*) The votes of Frank J. Henderson (exception 38), H. Bale Henderson (exception 39), Robert Connor (exception 58), Bill Russell (exception 62), and Bone Russell (exception 63), 5 in number, were counted for the defendant by his Honor in overruling the referee's 26th conclusion of law, as follows: "After 1 July, 1903, and before 1 January, 1909, the offense of making or selling liquor in Polk County (being punishable by imprisonment in the county jail or penitentiary) must be held to have been prosecuted under the act of 1903, whether the indictment charged or failed to charge the offense to have been committed feloniously." It would seem that these votes were properly excluded by the referee under the doctrine announced in *S. v. Hyman,* 164 N. C., 411; *S. v. Holder,* 153 N. C., 606; *S. v. Smith,* 174 N. C., 804, and under Article VI, section 2, of the State Constitution, which provides: "No person who has been convicted, or who has confessed his guilt in open court upon indictment, of any crime the punishment of which now is, or may hereafter be, imprisonment in the State's Prison, shall be permitted to vote, unless the said person shall be first restored to citizenship in the manner prescribed by law." Subtracting these votes from the total awarded to the defendant, 668 minus 5 leaves 663.

(*f*) The relator's 8th and 9th exceptions, bearing upon a kindred question, but somewhat different, to the one just considered, must be overruled. The following conclusion of law, as stated by the referee, was approved by the court below: "After 1 January, 1909, an indictment charging the 'felonious' sale of liquor in Polk County was an election on the part of the State to prosecute under said act of 1903, and an indictment failing to charge the 'felonious' sale was an election to prosecute under the act of 1908, or later public prohibition laws under which the offender is not punishable with imprisonment in the State's Prison." Section 7 of the act of 1908, now C. S., 3411, provides: "Nothing in this chapter shall operate to repeal any of the local or special acts of the general assembly of North Carolina prohibiting the manufacture or sale or other disposition of any of the liquors mentioned in this chapter, or any laws for the enforcement of the same, but all such acts shall continue in full force and effect and in concurrence herewith, and indictment or prosecution may be had either under this chapter or under any special or local act relating to the same subject." Thus it would seem that the referee's construction, as approved by the court below, is not only permissible, but is in keeping with the humane and proper interpretation of these criminal statutes. To hold otherwise would have the practical effect of withdrawing or exempting Polk

County from the operation of the general prohibition laws of the State; and this would be at variance with the declared intent and purpose of the Legislature. *Sheppard v. Dowling,* 127 Ala., 1; 25 R. C. L., 931.

(g) The votes of Otis Tony and 8 others were counted for the relator, and the votes of M. A. Bishop and 18 others (including the vote of E. B. Grice, though apparently not brought forward in assignments of error) were counted for the defendant, all of whom cast their ballots as absentee voters under Public Laws 1917, ch. 23, while in the county on the day of election. Some were sick, others about their work. We think these votes should have been eliminated from the count. Section 1 of the act in question provides: "That in all primaries and elections of every kind hereafter held in this State, any elector who may be absent from the county in which he is entitled to vote shall be allowed to register and to vote by mail as hereinafter provided." Thus it will be seen that the act as then in force applied only to those who were "absent from the county" on the day of election. The law in this respect was subsequently changed and amended (Public Laws 1919, ch. 322, now C. S., 5960 *et seq.*), but the present election was held under the 1917 statute. *Jenkins v. Board of Elections,* 180 N. C., 169. The principles announced in *Woodall v. Highway Commission,* 176 N. C., 377, in no way conflict with this position. Deducting these votes, we have: For the relator, 630 minus 9 equals 621; for the defendant, 663 minus 19 equals 644. This gives the defendant a majority of 23 votes, according to the legitimate findings of the referee and his Honor below.

No beneficial result would be accomplished by setting out in detail the exceptions still remaining, as they deal largely with questions of fact. There was some evidence tending to support the court's findings and rulings in each instance, and hence these exceptions must be overruled.

After a careful perusal of the entire record, we are convinced that the judgment in favor of the defendant, as herein modified, should be upheld.

On both appeals, modified and affirmed.